**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CASE NO.**

CHRISTIANAH ADARAMAJA,
individually and
on behalf of all others similarly situated,          **CLASS REPRESENTATION**

       Plaintiff,                                              **JURY TRIAL DEMANDED**

v.

SEDUCTION COSMETIC CENTER CORP.,

       Defendant.
_____/

**CLASS ACTION COMPLAINT**

      Plaintiff Heriberto Valiente brings this class action against Defendant Seduction Cosmetic

Center Corp., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts

and experiences, and, as to all other matters, upon information and belief, including investigation

conducted by Plaintiff's attorneys.

**NATURE OF THE ACTION**

      1.     This is a putative class action pursuant to the Telephone Consumer Protection Act,

47 U.S.C. § 227, *et seq.* (the "TCPA"), and the Florida Telephone Solicitation Act ("FTSA"), Fla.

Stat. § 501.059.

      2.     Defendant engages in unsolicited text message marketing, including to individuals

who have registered their telephone numbers on the National Do-Not-Call Registry, and to those

who have not provided Defendant with their prior express written consent as required by the FTSA.

      3.     Defendant's unsolicited text message spam caused Plaintiff and the Class members

harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their

1

privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones.

4.      Through this action, Plaintiff seeks an injunction and statutory damages on behalf of Plaintiff and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

5.      Plaintiff is, and at all times relevant hereto was, a citizen and resident of Miami-Dade County, Florida.

6.      Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that Plaintiff was the regular user of cellular telephone number that received Defendant's telephonic sales calls.

7.      Defendant is, and at all times relevant hereto was, a foreign limited liability company and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.220 and Fla. Stat. § 26.012(2). The matter in controversy exceeds the sum or value of $50,000 exclusive of interest, costs, and attorney's fees.

9.      Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state.   Defendant initiated and directed telemarketing and/or advertising text messages into Florida. Specifically, Defendant initiated and directed the transmission of unsolicited advertisement or telemarketing text messages to Plaintiff's cellular telephone number to sell goods, services or products in Florida.   Plaintiff's telephone

number has an area code that specifically coincides with locations in Florida, and Plaintiff received such messages while residing in and physically present in Florida.

10.    Venue for this action is proper in this Court because, pursuant to Fla. Stat. § 47.011, et seq., Defendant's principal place of business is in Miami-Dade County.

## **FACTS**

11.    Over of the past several months, Defendant has bombarded Plaintiff's cellular telephone with telephonic sales text messages, including the following:







12.     As demonstrated by the above screenshots, the purpose of Defendant's telephonic sales call was to solicit the sale of consumer goods and/or services. Specifically, the purpose of these text messages was to encourage Plaintiff to purchase tickets from Defendant for its events

13.     The messages also advertise and call attention to Defendant's products and related services.

14.     Plaintiff is the regular user of the telephone number that received the above telephonic sales calls.

15.     Plaintiff utilizes his cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.  In other words, Plaintiff's cellular telephone is Plaintiff's home telephone number and Plaintiff makes and receives personal calls on her cellular telephone. Moreover, Plaintiff's cellular telephone is the primary means of reaching Plaintiff at his residence.

16.     Plaintiff registered his cellular telephone number on the National Do-Not-Call Registry and the number was listed on the registry for over 30 days prior to Defendant's first text message solicitation.

17.     Plaintiff was in Florida when Plaintiff received the above text message calls, and Defendant's violative conduct occurred in substantial part in Florida.

18.     Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

19.     To transmit the above telephonic sales text message calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

20.     Moreover, the number utilized by Defendant to transmit the messages (1-786-755-3368) is known as a "short-code", which is utilized by computer software to send mass text message transmissions without any human involvement. Text messages utilizing a short-code cannot be sent with a regular telephone, but rather only automated computer software.

21.     To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform. Defendant's use of generic text messages (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

22.     Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

23.     Defendant would be able to conduct its business operations without sending automated text messages to consumers.

24.     Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

8

25.     Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

26.     Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

27.     The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

28.     Compliance with the FTSA will not result in Defendant having to cease its business operations.

29.     Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

30.     Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

31.     Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

32.     The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

33.     The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

34.     The Platform also has an auto-reply function that results in the automatic transmission of text messages.

35.    Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection and dialing of telephone numbers.

36.    More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection and dialing of telephone numbers.

37.    Since July 1, 2021, on information and belief, Defendant sent at least 50 text message solicitations to as many consumers in Florida.

38.    Defendant's unsolicited text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiff's and the Class members' telephones.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

39.    Plaintiff brings this lawsuit as a class action on behalf of Plaintiff individually and on behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3). The Classes that Plaintiff seeks to represent are defined as:

> **DNC Class**: **All persons in the United States who from four years prior to the filing of this action through the date of class certification (1) Defendant, or anyone on Defendant's behalf, (2) placed more than one text message call within any 12-month period; (3) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (4) regarding Defendant's property, goods, and/or services; (5) who did not purchase or transact business with Defendant during the eighteen months immediately preceding the date of the first message; and (6) who did not contact Defendant during the three months immediately preceding the date of the first message with an inquiry about a product, good, or service offered by Defendant.**

**FTSA Class**: **All persons in Florida who, (1) were sent a more than one text message regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff, (3) from July 1, 2021 through the date of class certification.**

40.     Defendant and its employees or agents are excluded from the Class.

**NUMEROSITY**

41.     Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to at least 50 persons. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

42.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

43.     There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Class are:

(a) Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

(b) Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

(c) Whether Defendant placed solicitations to individuals who registered their telephone numbers on the National Do-Not-Call Registry; and

(d) Whether Defendant is liable for damages, and the amount of such damages.

11

44.     The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendant routinely transmits telephonic sales calls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

45.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

46.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

48.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another

may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## VIOLATIONS OF 47 U.S.C. § 227(c) AND 64.1200(c)
### (On Behalf of Plaintiff and the DNC Class)

49.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

50.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

51.     Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

52.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

53.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

54.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

55.    As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

## COUNT II
## <u>VIOLATION OF FLA. STAT. § 501.059</u>
### (On Behalf of Plaintiff and the FTSA Class)

56.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

57.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

58.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

59.    "Prior express written consent" means an agreement in writing that:

1.   Bears the signature of the called party;

14

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

   a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

   b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services. Fla. Stat. § 501.059(1)(g).

60.     Defendant failed to secure prior express written consent from Plaintiff and the Class members.

61.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

62.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

63.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

64.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b)  An award of statutory damages for Plaintiff and each member of the Classes as applicable under the FTSA and/or TCPA;

c)  An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

d)  An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;

e)  An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

f)  Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

16

DATED: February 13, 2023

                                           Respectfully Submitted,

                                           /s/ Jennifer G. Simil
                                           **JIBRAEL S. HINDI, ESQ.**
                                           Florida Bar No.: 118259
                                           E-mail: jibrael@jibraellaw.com
                                           **JENNIFER G. SIMIL, ESQ.**
                                           Florida Bar No.: 1018195
                                           E-mail: jen@jibraellaw.com
                                           The Law Offices of Jibrael S. Hindi
                                           110 SE 6th Street, Suite 1744
                                           Fort Lauderdale, Florida 33301
                                           Phone: 954-907-1136

                                           *COUNSEL FOR PLAINTIFF*